**FOR PUBLICATION**

UNITED STATES BANKRUPTCY COURT
DISTRICT OF NEW JERSEY
----------------------------------------------------------X
                                                                                    CHAPTER 7
In Re:

Suzanne Perez,                                                              Case No.: 09-17729 (MBK)


                                            Debtor.
----------------------------------------------------------X
E53 Federal Credit Union,

                                            Plaintiff,
- against-
                                                                                    Ad. Pro. No. 10-1270 (MBK)
Suzanne Perez,


                                            Defendant.
----------------------------------------------------------X

APPEARANCES:

Peter J. Liska
Allison J. Kiffin
Peter J. Liska, LLC
766 Shrewsbury Avenue
Tinton Falls, NJ 07724
Attorneys for Plaintiff, E53 Federal Credit Union

Daniel E. Straffi
Straffi & Straffi
670 Commons Way
Toms River, NJ 08755
Attorney for Daniel Straffi, Chapter 7 Trustee


**MICHAEL B. KAPLAN, U.S.B.J.**

# OPINION

## I.  INTRODUCTION

This matter comes before the Court by way of the Chapter 7 Trustee's ("Trustee") Motion to Reconsider the Court's Approval of the Settlement Agreement between Defendant, the Defendant-Debtor, Suzanne Perez ("Debtor" or "Defendant") and Plaintiff, E53 Federal Credit Union ("the Credit Union").  The Trustee requests that the Court vacate its prior Order approving the Motion to Approve the Settlement Agreement and Vacating the Automatic Stay.[1]  The principal issues before the Court are: (1) whether the Credit Union has a perfected security interest in the Debtor's certificate of deposit pledged to secure a loan with the Credit Union; (2) whether the Federal Credit Union Act preempts Defendant's Uniform Commercial Code ("UCC") claims; and, (3) whether the Credit Union has a contractual and/or common law right of setoff against the Defendant's certificate of deposit.

For the reasons set forth below, the Court finds that the Plaintiff, the Credit Union, has a properly perfected lien against the certificate of deposit, both under the relevant UCC provisions and the Federal Credit Union Act.  The Court further finds that this lien was perfected before the Defendant's Chapter 7 Bankruptcy proceeding commenced.  Therefore, the Trustee may not avoid the lien.  The Court does not determine whether the Credit Union has a contractual and/or common law right of setoff against the Debtor's certificate of deposit inasmuch as the prior two grounds are clear.  Accordingly, the Trustee's Motion for Reconsideration is denied.

## II.  PROCEDURAL HISTORY/FACTS

On February 17, 2010, the Credit Union instituted this action against Defendant-Debtor Suzanne Perez.  The Credit Union is a federally chartered credit union organized under the laws

---

[1] It is uncontested that the Trustee was not served with the initial Motion to Approve Settlement.  Accordingly, E53 Federal Credit Union does not contest, and the Court need not analyze, whether the Trustee has satisfied the standards for reconsideration under Fed. R. Bankr. P. 9023.

2

of the United States, having its principal offices located in Linden, New Jersey. The Credit Union is the successor in interest to Four-Sixteen Federal Credit Union, having merged on July 1, 2009, and is now known as Motion Federal Credit Union. Under the terms of the merger, all of the assets and liabilities of the Four-Sixteen Federal Credit Union were assumed by the Credit Union. The Four-Sixteen Federal Credit Union was a small, federally chartered credit union. At no time did its assets exceed fifteen million dollars. The Credit Union normally had three to four employees and a volunteer Board of Directors. One of the Credit Union's employees was the Defendant, Suzanne Perez, who was employed by the Credit Union as head teller. See Pls.'Compl. 2, Feb. 17, 2010.

On or about February 7, 2002, the Defendant, while still working at Four-Sixteen Federal Credit Union, obtained a Line of Credit loan under Account no. xx883-07. Id. The loan was originally in the amount of $7,500.00, but was subsequently increased to $160,000.00. Id. The loan was secured by a pledge of Certificate of Deposit ("CD") in the name of Suzanne Perez (Account no. xx883) and a pledge of CD in the name of Marie Ragusa, Suzanne Perez's grandmother, and Laura Hagin, Suzanne Perez's sister (Account no. xx083). Id. The Ragusa/Hagin CD was in the amount of approximately $80,000.00. Id. The CD form contains the following in bold typeface: "NON-NEGOTIABLE + NON-TRANSFERABLE." Jim Patton, Loan Manager at the Motion Federal Credit Union, certified that this is the only form used by the Four-Sixteen Federal Credit Union. Dkt. ¶ 10.[2]

On March 31, 2009, Suzanne Perez filed a Chapter 7 Bankruptcy Petition. On July 21, 2009, Suzanne Perez received a Chapter 7 discharge. Suzanne Perez has made all required payments on Account no. xx883.

---

[2] No party has been able to produce either an original or copy of the CD in the name of Suzanne Perez. The Court accepts the uncontradicted sworn representation of Jim Patton, a Loan Manager employed by the Credit Union, that the Debtor's pledged CD included the same "Non-Negotiable + Non-Transferable" language thereon.

In the Fall of 2009, Laura Hagin and Marie Ragusa contacted the Credit Union and demanded information concerning their CD at the Credit Union. They were advised that their CD had been pledged as collateral for the loan of Suzanne Perez. Both women denied that they had ever authorized Suzanne Perez to pledge their CD as collateral for her loan.

The Credit Union was able to locate two Loanliner Open-End Disbursement security agreements for Suzanne Perez's Account no. xx883. Both security agreements, dated March 12, 2007 and February 8, 2008, respectively, indicate that the loan is secured by Account no. xx083, the Ragusa/Hagin CD. The security agreements are signed only by Suzanne Perez, and not Hagin or Ragusa, the actual owners of the account.

Based on the absence of a documented pledge of the Ragusa/Hagin CD, the Credit Union released the Ragusa/Hagin CD, in the approximate amount of $80,000.00, leaving the Credit Union inadequately protected under § 362 of the Code. To remedy this problem, pursuant to a negotiated settlement agreement with Ms. Perez, Defendant agreed that the Plaintiff, with the Court's permission, could apply the proceeds of her previously pledged CD, Account no. xx883, in the approximate amount of $71,350.17, to the balance of her loan with the Credit Union.

On June 15, 2010, the Credit Union submitted a Motion to Approve the Settlement Agreement between the Credit Union and Defendant, Suzanne Perez. Dkt. ¶ 4. The parties additionally sought a Court Order Vacating the Automatic Stay to permit the Plaintiff to apply the proceeds of the Defendant's CD to the balance due on the loan. Id. On July 22, 2010, this Court entered an Order approving the Motion to Approve the Settlement Agreement and Vacating the Automatic Stay. Dkt. ¶ 6.

The Trustee has moved the Court to reconsider and vacate the Order. Oral argument on the motion was held on November 22, 2010. At the conclusion of the hearing, the Court took the

4

matter under advisement and reserved decision. After reviewing the parties' submissions and applicable law, the Court is prepared to rule.

### III. JURISDICTION

The Court has jurisdiction over this contested matter under 28 U.S.C. §§1334(a) and 157(b) and the Standing Order of the United States District Court dated July 10, 1984, referring all bankruptcy cases to the bankruptcy court. This matter is a core proceeding within the meaning of 28 U.S.C. §§ 157(b)(2)(A), (G) and (K). Venue is proper in this Court pursuant to 28 U.S. C. §1409(a). The following constitutes the Court's findings of fact and conclusions of law as required by Fed. R. Bankr. P. 7052.[3]

### IV. DISCUSSION

#### A. Perfection under the Uniform Commercial Code

The issue before the Court is whether the CD should be characterized under the Uniform Commercial Code ("UCC") as a deposit account or an instrument. Plaintiff alleges that the CD should be characterized as a deposit account and the Trustee claims that it is an instrument. If the CD is a deposit account, it need be perfected only by control. N.J.S.A. 12A:9-314. In contrast, if the CD is deemed an instrument, the general rule is that for a party's interest in the collateral to be perfected, it must either file a financing statement or be in possession of the instrument. N.J.S.A. 12A:9-308(a); N.J.S.A. 12A:9-313. The Court concludes that this non-negotiable and non-transferable CD is a deposit account and that the Credit Union holds a perfected security interest therein because the Credit Union maintains control of the account.[4]

---

[3] To the extent that any of the findings of fact might constitute conclusions of law, they are adopted as such. Conversely, to the extent that any conclusions of law constitute findings of fact, they are adopted as such.

[4] Under the terms of the Federal Credit Union Act, 12 U.S.C. § 1757(6), a credit union can offer several types of deposit accounts including share and share certificate accounts. Credit Unions, as cooperative, member-owned, not for profit organizations, refer to depositors as "members" since all credit unions actually have an ownership interest in the cooperative. Deposits at federally chartered credit unions are referred to as "shares" and deposit accounts can

5

The New Jersey code defines a deposit account as a "demand, time, savings, passbook, or similar account maintained with a bank." N.J.S.A. 12A:9-104(1). N.J.S.A. 12A:9-214 provides that a "security interest in . . . deposit accounts . . . may be perfected by control of the collateral under 12A:9-104…" N.J.S.A. 12A:9-104 outlines the requirements for control and provides that "a secured party has control of a deposit account if the secured party is the bank with which the deposit account is maintained." N.J.S.A. 12A:9-104(a)(1).

A "certificate of deposit" means "an instrument containing an acknowledgement by a bank that a sum of money has been received by the bank and a promise by the bank to repay the sum of money." N.J.S.A. 12A:3-104(j). A certificate of deposit is essentially a note of the bank. Id. An "instrument" is defined as "a negotiable instrument *or* other writing that evidences a right to payment of a monetary obligation, and is *of a type* that in the ordinary course of business is transferred by delivery with any necessary endorsement or assignment." N.J.S.A. 12A:9-102(47) (*emphasis added*).[5] The official comment to this section includes the following clarification:

> "Under the definition, an uncertificated certificate of deposit would be a deposit account (assuming there is no writing evidencing the bank's obligation to pay). Whereas a non-negotiable certificate of deposit would be a deposit account only if it is not 'an instrument' as defined in this section (a question that turns on whether the non-negotiable certificate of deposit is 'of a type that in the ordinary course of business is transferred by delivery with any necessary endorsement or assignment.')."

Id. The Court concludes that the CD is not "of a type that in the ordinary course of business is transferred by delivery with any necessary endorsement or assignment."[6] Id. The CD offered by

---

be offered as share accounts ("savings accounts"), share draft accounts ("checking accounts") and share certificates ("Certificates of Deposit"). Id. See Dkt. ¶ 10.

[5] This can be contrasted with the definition of "instrument" provided under Article 3. Article 3 defines "instrument" simply as "negotiable instrument." N.J.S.A. 12A:3-102(b) explicitly provides that "[i]f there is a conflict between [chapter 3] and chapter 9, chapter 9 governs." Id. Therefore, the Court will use the more expansive Article 9 definition of "instrument" in its analysis which embraces both the "negotiable-instrument" concept and the "other-writing" concept. See Morgan v. Farmers & Merchants Bank, 856 So.2d 811, 818 (Ala., 2003).

[6] In determining that the CD is not "of a type that in ordinary course of business is transferred by delivery with any necessary endorsement or assignment," the Court limits its holding to usage of trade in the industry - i.e. the credit union industry. N.J.S.A. 12A:1-205 provides that "a usage of trade is any practice or method of dealing having such

Four-Sixteen Federal Credit Union is a non-negotiable and non-transferable CD. Michael Greenwood, President and Chief Executive Officer of the Credit Union, has been employed in three different credit unions over the past fifteen years. Greenwood Aff. 1. Mr. Greenwood certified that the nontransferable/nonnegotiable language on the Credit Union's CD form is standard in the credit union industry with regard to share certificate accounts. Id. Moreover, Mr. Greenwood points the Court's attention to the Motion Federal Credit Union Disclosures governing credit union accounts and membership. Specifically, Page 10 of the Disclosures deals with share certificate accounts and states: "Nontransferable/Nonnegotiable – Your account is nontransferable and nonnegotiable." Id. The Court takes further guidance from the reasoning of Judge Morgenstern-Clarren in In re Verus Investment Management, LLC, 344 B.R. 536 (Bankr. N.D. Oh. 2006), wherein the Court reasoned that a CD was a deposit account where there was an account "agreement [that] prohibit[ed] the debtor from transferring or assigning the account without the bank's written consent and only permit[ted] the debtor to withdraw or transfer funds from the account using forms approved by the bank."[7]

Furthermore, as a policy matter, while the CD is technically certificated, the Court believes this is a matter of form over substance. The official comment to N.J.S.A. 12A:9-102(47) expressly differentiates between a certificated and uncertificated CD. This distinction implies that the certificate itself is of value. In this case, however, the CD has no value and explicitly states that it is non-negotiable and non-transferable. This CD neither functions like an

---

regularity of observance in a place, vocation or trade as to justify an expectation that it will be observed with respect to the transaction in question. The existence and scope of such a usage are to be proved as facts." Id.

[7] The Court recognizes the line of cases that hold that the language on the CD itself is not controlling but, rather, the Court should look to the realities of the marketplace in determining whether the CD should be characterized as an instrument or a deposit account. See Omega Environmental Inc. v. Valley Bank NA, 219 F.3d 984 (9th Cir. 2000); Cadle Co. v. Citizens National Bank, 200 W. Va. 515, 490 S.E. 2d 334 (W.Va. 1997). However, in the cases that characterize the collateral as an instrument, the CD fell within the "other-writing" concept. Specifically, the CD was "of a type that in the ordinary course of business is transferred by delivery with any necessary endorsement or assignment." N.J.S.A. 12A:9-102(47). Therefore, these cases are distinguishable.

instrument, nor possesses the attributes ordinarily associated with an instrument. Indeed, as a non-negotiable CD, possession is not required in order to enforce the underlying obligation. N.J.S.A. 12A:3-201(a); See In re Federal-Mogul Global, Inc., 319 B.R. 363, 367 (Bankr. D. Del. 2005). Accordingly, any benefit of certification – allowing parties to trade in confidence or putting a third party on notice of the CD's existence – is mooted if the certificate itself is without value. See U.S. v. Thomas, 315 F.3d 190 (3d Cir. 2002) (citing Manor Bldg. Corp. v. Manor Complex Associates, Ltd., 435 Pa. Super. 246, 645 A.2d 843, 846 (1994)).

Having determined that the CD should be characterized as a deposit account, the Court must determine whether the Credit Union has control over the account as required by N.J.S.A. 12A:9-104. The Credit Union is a bank and is holding the funds represented by the share certificate. Accordingly, the deposit account is maintained at the bank, the Credit Union satisfies the 12A:9-104 control requirement, and is a perfected secured creditor in the deposit accounts of Defendant, Suzanne Perez.

### B. Perfection under the Federal Credit Union Act

In the alternative, Plaintiff argues that the statutory lien created under the Federal Credit Union Act statutory lien, 12 U.S.C. § 1751, 12 C.F.R. 701.39, preempts state law and is perfected at the time the loan is made. Dkt. ¶ 23. In response, the Trustee argues that, notwithstanding the federal statute, the Trustee may avoid the lien pursuant to 11 U.S.C. § 545. Hr'g, Nov. 22, 2010. The Court agrees with Plaintiff and finds that the Credit Union has a perfected federal statutory lien against Suzanne Perez's share certificate which was perfected prior to the commencement of the Defendant's Chapter 7 bankruptcy proceeding.

The Federal Credit Union Act grants federally chartered credit unions a floating lien on all shares on deposit in credit union accounts. See In re Cabrera, 2009 WL 4666460 (Bankr.

S.D. Fla. 2009); National Credit Union Administration Interpretive Ruling and Policy Statement 82-5, December 22, 1982 ("NCU Ruling"). Specifically, 12 U.S.C. § 1757(11) provides that a federal credit union shall have the power "to impress and enforce a lien upon the shares and dividends of any member, to the extent of any loan made to him and any dues or charges payable to him." Id. 12 U.S.C. § 1752 (5) defines "member account" as:

> "[a] share, share certificate, or share draft account of a member of a credit union of a type approved by the Board which evidences money or its equivalent received or held by a credit union in the usual course of business and for which it has given or is obligated to give credit to the account of the member . . . "

Id. The Act defines "statutory lien" as "the right granted by 12 U.S.C. 1757 (11) for a federal credit union to establish a right in a claim to a member's shares and dividends equal to the amount of that member's outstanding financial obligation to the credit union, as that amount varies from time to time." 12 C.F.R. 701.39 (a)(5). The NCU Ruling establishes that a credit union's lien on a member's account vests at the time the loan is granted. NCUA I.R.P.S. 82-5 (12/22/82).

The Federal Credit Union Act preempts state law, namely, any UCC provisions that conflict with the Act. Pursuant to the preemption doctrine, federal law will preempt state law if "the state law and the federal law are in actual conflict such that compliance with both is physically impossible or the state law obstructs the accomplishment of the full objectives of Congress." U.S. Const. art. VI, cl. 2; Stepan Co. v. Callahan Co., 568 F.Supp.2d. 546, 555 (D.N.J. 2008); In re Aylward, 208 B.R. 565, Bankr. M.D. Fla. 1997) (holding that "[w]here the statutory lien is created by federal law, federal law governs.").[8] See also In re Gifford, 174 B.R.

---

[8] Section 12 C.F.R. 701.21(b) expressly states that Section 1757(5) of the Federal Credit Union Act preempts any state law purporting to limit conditions related to "the type or amount of security and the relation of the security to the amount of the loan" and "the "imposition and enforcement of liens on the shares of borrowers." 12 C.F.R. 701.21(b)(1)(iii)(C); 12 C.F.R. 701.21(b)(1)(iii)(E).

9

231 (Bankr. W.D.Ky. 1994) (holding that the Federal Credit Union Act displaces contrary Article 9 UCC provisions).

Accordingly, it is possible for the Credit Union to have a properly perfected security interest in the collateral without complying with the perfection process outlined in Article 9.  The Court holds that the account held by the Credit Union fits squarely within the above definition of "member account."  Suzanne Perez's deposit account was offered as a share certificate, was approved by the Credit Union Board, and the Credit Union was obligated thereunder to give credit to the Perez account.  12 U.S.C. § 1752(5).  Moreover, the security agreement the Defendant had signed contains all the necessary criteria detailing the security interest in the share certificate as collateral for the loan.[9]  Therefore, perfection of the statutory lien on the "member account" occurred automatically at the moment the loan was originated.

The Trustee nonetheless argues that he may avoid the fixing of this statutory lien pursuant to his avoidance powers.  Generally, the Bankruptcy Code provides that a Trustee may avoid the fixing of certain statutory liens in property of the debtor.  11 U.S.C. § 545.  However, § 545 (1)(A) provides that a Trustee's avoidance powers are only triggered if the lien "first became effective against the debtor when a case under this title concerning the debtor is commenced." Id.  Alternatively, § 545(2) provides that a statutory lien may be avoided to the extent "it is not perfected or enforceable at the time of the commencement of the case against a bona fide purchaser . . ."  Id.  In this case, the statutory lien against the CD vested at the time the loan had been originated, on February 7, 2002, well before the Defendant's bankruptcy case commenced. Therefore, § 545 has no application and the Trustee may not avoid the fixing of the statutory lien.  See In re Pohrman, 146 B.R. 570 (Bankr. D. Or. 1992).

---

[9] The Credit Union security agreement reads, in pertinent part, "SECURITY.  You pledge as security for the Plan all shares and dividends and, if any, all deposits and interest in all joint and individual accounts you have with us now and in the future."

### C. Common Law and Contractual Right of Set-off

Lastly, the Credit Union argues that it also has a contractual and common law right of setoff against the Defendant's share certificate. Plaintiff argues that its right of setoff against the depositor's accounts extends to the depositor's certificate of deposit. FDIC v. Pioneer, 155 N.J.Super. 381 (Law Div. 1977). The Trustee argues that, without proof of the terms and conditions of the certificate, the Credit Union cannot claim a right of setoff since "the right of setoff is based on the contractual relationship between the parties." Hudson United Bank v. House of Supreme, Inc., 149 N.J. Super 153, 160, 373 A.2d 438 (Ch. Div. 1977). The Court declines to address the merits of either party's arguments inasmuch as it is sufficiently persuaded to find for the Plaintiff on the above discussed two grounds. Accordingly, the Court does not decide whether Plaintiff can establish a claim of setoff.

### V. CONCLUSION

For the foregoing reasons, this Court rules E53 Federal Credit Union has a perfected lien in Suzanne Perez's certificate of deposit under the UCC and the Federal Credit Union Act. Furthermore, this lien was properly perfected before the Defendant's bankruptcy proceeding was commenced. Thus, the Trustee may not avoid the lien. Accordingly, the Court denies the Trustee's Motion to Reconsider the Court's Approval of the Settlement Agreement. Plaintiff is directed to submit a form of order.

Dated: December 7, 2010

*[signature]*
Honorable Michael B. Kaplan
United States Bankruptcy Judge